UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.                                              Criminal No.: 3:23-CR-39-CWR-LGI

WILLIAM ROBERT SHEPHERD, III

_____

### RESPONSE OF UNITED STATES TO MOTION TO DISMISS
_____

The United States of America, by and through the Office of the United States Attorney, hereby respectfully requests that this Honorable Court enter an order denying the Defendant's Motion to Dismiss the Indictment, which motion is based on an argument that the registration requirement under the National Firearms Act, is unconstitutional in the wake of the United States Supreme Court's decision in *Bruen*. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). As discussed below, (1) Short-barrel shotguns do not fall under the Second Amendment's protection; (2) the National Firearms Act's (NFA) registration and taxation requirements do not "infringe" on the right to keep and bear arms; and (3) the NFA's registration and taxation requirements are analogous to historical laws regulating commerce in firearms and, thus, they are part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.

### Legal Standard

A party may raise by pretrial motion "any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). That includes a motion to dismiss for "a defect in the indictment." *Id.* 12(b)(3)(B). Dismissing an indictment is "extraordinary and unusual relief" as it "encroaches upon the fundamental role of the grand jury."

*United States v. Cage*, 2022 WL 17254319, at *1 (S.D. Miss. Nov. 28, 2022) (citing *United States v. Cockerham*, 2022 WL 4229314, at *1 (S.D. Miss. Sept. 13, 2022)).

The propriety of such a motion turns on whether the defect involves a question of law or fact. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011). If it involves a question of law, the Court should consider the motion. *Id.*

**I. The *Bruen* Standard for Second Amendment Claims**

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court clarified the appropriate standard for analyzing Second Amendment claims. The Supreme Court held that lower courts had been incorrect in reading precedent to require a means-end analysis in evaluating Second Amendment claims. *Bruen*, 142 S. Ct. at 2129. Instead, the Court explained that *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), held, "on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms" for self-defense. *Id.* at 2127 (quoting *Heller*, 554 U.S. at 595, 128 S.Ct. 2783) (emphasis in original). Further, the Supreme Court emphasized that "*Heller* and *McDonald* expressly rejected the application of any" means-end scrutiny because "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Id.* at 2129 (quoting *Heller*, 554 U.S. at 634, 128 S.Ct. 2783; *see also McDonald v. City of Chicago*, 561 U.S. 742, 790–91, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010)). In place of a means-end analysis, then, the Supreme Court stated the following standard for considering Second Amendment claims:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify

> its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129–30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961)).

In applying *Bruen's* standard, courts must first address the threshold question of whether the Second Amendment's plain text protects the conduct that is being regulated. *Id.* at 2126, 2134. If it does, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S.Ct. at 2127. This requires courts to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2131. Because "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them," *id.* at 2136 (quoting *Heller*, 554 U.S. at 634–35, 128 S.Ct. 2783) (emphasis in original), the Second Amendment's "meaning is fixed according to the understandings of those who ratified it." *Id.* at 2132. Thus, in assessing "unprecedented societal concerns or dramatic technological changes" that could not have been anticipated by the Founders, "the historical inquiry that courts must conduct will often involve ... determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation." *Id.* at 2132. To that end, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Id.* at 2133 (quoting *McDonald*, 561 U.S. at 767, 130 S.Ct. 3020 (quoting *Heller*, 554 U.S. at 599, 128 S.Ct. 2783)).

However, the Court noted that "analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." *Id.* at 2133. Instead, "analogical

reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*

In *Bruen*, the Supreme Court illustrated the application of its Second Amendment standard by breaking down its decision in *Heller*. *Id.* at 2127–28. In *Heller*, the Supreme Court addressed the threshold inquiry of whether the regulation implicated conduct protected by the Second Amendment by first analyzing the Amendment's plain text. The Court explained "keep and bear arms" provides for "the individual right to possess and carry weapons in case of confrontation." *Id.* at 592, 128 S.Ct. 2783. Additionally, the Court defined "arms" under the Second Amendment as "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another," which includes "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582, 128 S.Ct. 2783 (internal citations omitted).

Next, however, the Court noted that the right to armed self-defense was not an unlimited "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626, 128 S.Ct. 2783. Rather, the Court cited its decision in *U.S. v. Miller*, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), "for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons." *Id.* at 623, 128 S.Ct. 2783 (citing *Miller*, 307 U.S. at 178, 59 S.Ct. 816). The Court emphasized *Miller's* holding: "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right [protected under the Second Amendment]." *Id.* at 625, 128 S.Ct. 2783.

This limit on the Second Amendment's protection is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627, 128 S.Ct. 2783.

In light of those definitions and limits to the Second Amendment's protection, the Court addressed the threshold issue and determined that the law at issue—a complete ban on the possession of handguns—did implicate conduct protected by the Second Amendment, which prompted the Court's analysis of whether the regulation was in line with the Nation's history and tradition. *Id.* at 628, 128 S.Ct. 2783. After conducting a historical analysis, the Court concluded the Second Amendment did not support the complete ban on handguns created by the regulation at issue, and as such the regulation was unconstitutional. *Id.* at 636, 128 S.Ct. 2783.

### II. Statutory Framework of the National Firearms Act

The relevant part of the NFA states: "It shall be unlawful for any person ... to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The NFA further provides that "[a]ny person who violates or fails to comply ... shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both." 26 U.S.C. § 5871. The NFA further provides:

> The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length ; [and] (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length…the term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

26 U.S.C.§ 5845(a). Thus, the Defendant's indictment implicates short-barreled shotguns, which are firearms regulated by the NFA.

Moreover, to lawfully possess the firearms identified by the NFA, the Act requires individuals to register their firearms in the National Firearm Registration and Transfer Record

(NFRTR). 26 U.S.C. § 5841(b). To register, any "manufacturer, importer, [ ] maker" and transferor must file an application with the Secretary of the Treasury that includes: (1) the proper stamp evidencing payment of the $200 tax; (2) identification for the firearm to be registered; and (3) identification of the applicant (if the firearm is being transferred, the application must identify both the transferor and the transferee), including fingerprints and a photograph. 26 U.S.C. §§ 5811, 5812, 5821, 5822. However, the NFA establishes that the Secretary will deny an application if the making, transfer, receipt, or possession "of the firearm would place the person making the firearm [or the transferee] in violation of the law." 26 U.S.C. §§ 5812, 5822.

### III. Short-barrel shotguns do not fall under the Second Amendment's protection.

Count One of the Indictment charges Defendant with knowingly possessing a short-barreled shotgun not registered to him in the NFRTR, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. Defendant argues the NFA's regulation of short-barreled shotguns burdens his Second Amendment rights in a way that is unsupported by this Nation's historical traditions. Specifically, Defendant contends his short-barreled shotgun falls within the meaning of "arms" under the Second Amendment and his right to possess it is therefore protected.

The issue before the Court is whether the Second Amendment protects a right to bear short-barreled shotguns, which turns on *Bruen's* impact on Supreme Court precedent speaking to this issue. Under *Bruen*, then, this Court must first determine whether the Second Amendment's plain text covers the conduct at issue. *Bruen*, 142 S.Ct. at 2126. If it does, "the Constitution presumptively protects that conduct" unless the government can "demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

In addressing the threshold question, the Court should find that the NFA's regulation of the conduct at issue here—the possession of a short-barreled shotgun—does not implicate conduct

protected by the Second Amendment. The Supreme Court has expressly and repeatedly held that short-barreled shotguns do not fall within the scope of the Second Amendment's protections. In *Miller*, the Court determined:

> In the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument.

*Miller*, 307 U.S. at 178, 59 S.Ct. 816. The Court then affirmed that holding in *Heller*: "We therefore read *Miller* to say only that the Second Amendment does not protect ... short-barreled shotguns." *Heller*, 554 U.S. at 625, 128 S.Ct. 2783; *see also U.S. v. Thompson/Center Arms Co.*, 504 U.S. 505, 517, 112 S.Ct. 2102, 119 L.Ed.2d 308 (1992) (emphasizing that the regulation of short-barreled rifles "addresses a concealable weapon likely to be" used for criminal purposes); H.R. Rep. No. 1337, 83d Cong., 2d Sess., A395 (1954). *Bruen* did not overturn these holdings; rather, it quoted, explained, re-affirmed, and then applied them. *See, e.g., Bruen*, 142 S.Ct. at 2127–28, 2132, 2134–35. Thus, the Supreme Court's precedent controls and explicitly directs that the regulations governing the possession of short-barreled shotguns under which Defendant was indicted do not regulate conduct protected by the Second Amendment.

Defendant attempts to overcome this precedential hurdle by arguing short-barreled shotguns are in common use. While Defendant correctly points out that *Bruen* dictates "the Second Amendment protects the possession and use of weapons that are 'in common use at the time,'" Bruen, 142 S.Ct. at 2128 (quoting Heller, 554 U.S. at 627, 128 S.Ct. 2783 (quoting Miller, 307 U.S. at 179, 59 S.Ct. 816)), this argument ignores the rest of Bruen's discussion of the issue. More fully, the Court stated:

> After holding that the Second Amendment protected an individual right to armed self-defense, we also relied on the historical understanding of the Amendment to

> demark the limits on the exercise of that right. We noted that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." ... "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." ... For example, we found it "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'" that the Second Amendment protects the possession and use of weapons that are "in common use at the time."

*Id.* at 2128 (first quoting *Heller*, 554 U.S. at 626–27, 128 S.Ct. 2783; then quoting *Miller*, 307 U.S. at 179, 59 S.Ct. 816) (emphasis added) (internal citations omitted).

The express purpose of the NFA was to regulate the making and receipt of "certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used." *Thompson/Center Arms Co.*, 504 U.S. at 517, 112 S.Ct. 2102 (highlighting the "clearly indicated congressional intent to cover under the [NFA] only such modern and lethal weapons, except pistols and revolvers, as could be used readily and efficiently by criminals or gangsters"). Further, the firearms at issue—short-barreled shotguns—are not indisputably "'in common use' today for self-defense," as were the handguns at issue in *Heller* and *Bruen*. *Bruen,* 142 S.Ct. at 2134 (citing *Heller*, 554 U.S. at 628–29, 128 S.Ct. 2783 ("The handgun ban amounts to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for that lawful purpose [of self-defense].")). Rather, Congress and the Supreme Court have already determined short-barreled shotguns are dangerous and unusual weapons likely to be used not for self-defense, but for criminal purposes. Those directives control.

Thus, as the Supreme Court has already held, short-barreled shotguns do not fall within the Second Amendment's protection. Accordingly, the NFA's regulation of their possession does not infringe on Defendant's Second Amendment right to keep and bear arms and further analysis into the challenged regulation is not necessary. *Bruen*, at 2129–30.

### IV. The NFA's registration and taxation requirements do not "infringe" on the right to keep and bear arms.

The NFA's registration and taxation requirements, which applied to the short-barreled shotgun that the Defendant possessed, do not "infringe" on the right to keep and bear arms. Under *Bruen*, the government only needs to address historical analogs "[w]hen the Second Amendment's plain text covers an individual's conduct." 142 S. Ct. 2129-30. The Amendment does not say that the right to keep and bear arms cannot be "burdened in any way," but that it shall not be "infringed." Administrative burdens that stop far short of disarming law-abiding citizens do not "infringe" the right to keep and bear arms. *See* Webster's 1828 American Dictionary of the English Language (defining "infringe" as "[t]o break; to violate; to transgress" and "[t]o destroy or hinder").

Here, individuals—including, in theory, even the Defendant himself—can lawfully own, possess and transfer short-barreled shotguns, assuming that they follow the registration and taxation requirements. *See generally* 26 U.S.C. Ch. 53. *Heller* and *Bruen* make clear that the government cannot *prohibit* the in-home possession and public carrying of firearms, at least for self-defense purposes. Yet, *Bruen* expressly did not disturb the "shall issues" licensing laws that exist in 43 states. 142 S. Ct. at 2138 n.9. And Justice Kavanaugh's concurrence emphasized that states can constitutionally require license applicants to "undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." 142 S. Ct. at 2162. A registration scheme for short-barreled shotguns is no more burdensome than the kind of requirements that the Supreme Court has found not to be problematic. The statutes alleged in Count One of the indictment do not ban possession; rather, they require registration and documentation, as well as the payment of appropriate, reasonable taxes. *See* 26 U.S.C. Ch. 53. Thus, such a scheme is constitutional, even if

there is no historical analog to it.

**V.    The NFA's registration and taxation requirements are analogous to historical laws regulating commerce in firearms and, thus, they are part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.**

Based on the above, the Court need not consider whether the NFA's registration and taxation requirements are consistent with the nation's historical tradition of firearm regulation. *See Bruen*, 142 S. Ct. 2129-30. Nevertheless, the government submits that the relevant statutes are analogous to historical laws regulating commerce in firearms. As a result, they survive constitutional scrutiny even if *Bruen* is applied.

"[C]olonial governments substantially controlled the firearms trade." *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017). For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals." Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 76 (2017). "A 1631 Virginia law required the recording not only of all new arrivals to the colony, but also 'of arms and munitions.'" *Id.* In the early 17th century, Connecticut banned residents from selling firearms outside the colony. *Teixeira*, 873 F.3d at 685. Virginia provided that people were at "liberty to sell armes and ammunition to any of his majesties loyall subjects *inhabiting this colony*." *Id.* at 685 n.18 (emphasis added). And other colonial governments "controlled the conditions of trade" in firearms. *Id.* at 685.

States continued to enact laws governing "the manufacture, sale, [and] transport" of guns and ammunition in the 18th and 19th centuries. *Id.* at 74. For example, in 1814, "Massachusetts required that all musket and pistol barrels manufactured in the state be first tested," and it appointed a state inspector "to oversee or conduct the testing." *Id.* Likewise, in 1820, "New Hampshire created and appointed state gunpowder inspectors to examine every storage and manufacturing

site." *Id.* Meanwhile, "[t]wentieth century laws extended safety regulations pertaining to gunpowder and other explosives." *Id.*

Like these early laws, the NFA's registration and taxation requirements for short-barreled shotguns do not prohibit possessing or even transferring them. Instead, the statutes at issue merely impose record-keeping and attendant payment requirements to document the items, to help ensure that they can be traced (e.g., when they are believed to have been used in a crime). Although the statutes are not identical to the above historical statutes, *Bruen* explained that the government need only identify a "historical *analogue*, not a historical *twin*." 142 S. Ct. at 2133. In this case, the practice of the colonies and the United States of regulating commerce in firearms provides a sufficient historical analog.

## VI.    Conclusion

Based on the foregoing, the Court should deny the Defendant's Motion to Dismiss.


Respectfully submitted,

TODD W. GEE
United States Attorney

By:    *s/Adam T. Stuart*_____
ADAM T. STUART
501 East Court Street, Suite 4.430
Jackson, MS 39201
Telephone: (601) 965-4480
Fax: (601) 965-4035
Wisconsin Bar No. 1104004
Email: Adam.Stuart@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Adam T. Stuart, Assistant United States Attorney, hereby certify that on this day, I caused to be electronically filed the foregoing document with the Clerk of the Court, which provides notice to all counsel of record.

This the 17th day of October 2023.


 /s/  *Adam T. Stuart*
ADAM T. STUART
*Assistant United States Attorney*