IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                           *Plaintiff,*

*v.*                                                     CASE NO. 3:23-CR-39-CWR-LGI

WILLIAM ROBERT SHEPHERD, III,

                           *Defendant.*

## ORDER

Before the Court are the Defendant's *Motion to Dismiss Indictment*, the government's response in opposition, and the Defendant's reply. *See* Docket Nos. 28, 29, and 30. A hearing was held on this motion on November 28, 2023. Upon review, the motion will be denied.

## I.      Facts and Procedural History

William Robert Shepherd, III was driving his vehicle on the Natchez Trace Parkway on August 2, 2022, when Park Ranger Richard Perry pulled him over. Perry says he stopped Shepherd because, although the hauling of non-recreational materials is not permitted on the Natchez Trace Parkway,[1] Shepherd's vehicle had lumber atop the roof

---

[1] Officer Perry's stop was based on suspicion that Shepherd was violating "36 CFC 7.43(c)(5) for Adult NATR Trailers." Docket No. 19 at 2; *see also* Docket No. 20-1. The stop and ensuing search were the subject of Shepherd's prior suppression motion. Docket No. 19. After a hearing, the Court denied the motion. *See* Text-Only Order of August 25, 2023.

and bore a business decal for "Jack Rabbit Services." The vehicle also had a small rack attached to the receiver hitch with a wheelbarrow tethered to the rack.

Upon pulling Shepherd over, Perry claimed that he smelled marijuana coming from the car. Shepherd produced his driver's license but could not locate proof of insurance. Perry asked Shepherd to step out of the vehicle and proceeded to search his person and the vehicle. Shepherd allegedly told the officer that he had a "blunt" of marijuana in the center console and a "sawed off shotgun" by the passenger seat. Docket No. 20-1 at 3. While searching the vehicle, Perry located a pump action shotgun. The shotgun was unloaded and "missing most of the stock and part of the barrel was cut off." *Id.* Perry identified the shotgun as a "Savage Steven's Model 820B 12-guage pump shotgun." *Id.* Perry arrested Shepherd and cited him for Non-Recreational Hauling, No Insurance, Possession of Marijuana Less than 1 oz., and Possession of Paraphernalia.

Shepherd was later indicted on one count of receiving and possessing a short-barreled shotgun that was not registered under the National Firearms Act ("NFA"), in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. These statutes will be described below.

The present motion followed. In it, Shepherd brings both a facial and an "as-applied" challenge to the registration requirement for his short-barreled shotgun.

## II.    Legal Standard

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). That includes a motion to dismiss for a "defect in the indictment." *Id* at 12(b)(3)(B).

In an as-applied challenge, the court asks whether a law with some permissible uses "is nonetheless unconstitutional as applied to appellant's activity." *Spence v. Washington*, 418 U.S. 405, 414 (1974) (reversing Mr. Spence's criminal conviction); *see also Street v. New York*, 394 U.S. 576, 594 (1969) (reversing Mr. Street's criminal conviction).

In contrast, in a facial challenge, the court asks whether a law "could never be applied in a valid manner." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "Facial challenges to the constitutionality of statutes should be granted sparingly and only as a last resort." *Serafine v. Branaman*, 810 F.3d 354, 365 (5th Cir. 2016) (cleaned up).

"[F]or reasons relating both to the proper functioning of courts and to their efficiency, the lawfulness of the particular application of the law should ordinarily be decided first." *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 485 (1989).

## III.   Discussion

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

The Supreme Court announced a new test to analyze Second Amendment claims in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *Bruen* rejected the means-ends scrutiny courts were using for Second Amendment claims and clarified how courts

"assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen*, 142 S. Ct. at 2131. The Court then explained this new two-step test for analyzing Second Amendment challenges:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id*. at 2129-30.

Shepherd primarily argues that short-barreled firearms are covered by the Second Amendment and that no historical analogues support the NFA's registration requirement. Docket No. 28 at 1. He then argues that "even if the registration of his firearm is supported by historical analogues, there are no historical analogues that would justify a complete and permanent deprivation of Shepherd's Second Amendment rights based on his failure to register the firearm." *Id*. at 1-2.

To be clear, Shepherd was not indicted for simply *having* a short-barreled shotgun. He was indicted for having a short-barreled shotgun that was not registered according to the NFA. If convicted of the present charge, though, Shepherd would be permanently disarmed for life. Shepherd's secondary argument attacks this collateral consequence.

Contrarily, the government argues that the Second Amendment does not protect the possession of short-barreled shotguns. Docket No. 29 at 6-7. It relies on the Supreme Court's decisions holding that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-

barreled shotguns." *Heller*, 554 U.S. at 625. Furthermore, the government says this limit on the Second Amendment is "supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" Docket No. 29 at 8. The government argues that this "registration scheme for short-barreled shotguns is no more burdensome than the kind of requirements that the Supreme Court has found not to be problematic." *Id.* at 9. The NFA is akin to "shall issue" licensing laws blessed in *Bruen*, it claims, because it requires only registration, documentation, and payment of taxes. *Id.*

Before analyzing Shepherd's arguments under the *Bruen* framework, the Court thinks it important to review the relevant statutes Shepherd is charged with violating, along with the caselaw relevant to the constitutionality of short-barreled shotguns.

### A.    The National Firearms Act ("NFA")

The NFA was passed in 1934 as part of the Internal Revenue Code. Stephen P. Halbrook, *Congress Interprets the Second Amendment: Declarations by a Co-Equal Branch on the Individual Right to Keep and Bear Arms*, 62 Tenn. L. Rev. 597, 602-12 (1995). The statute requires certain categories of firearms and weapons to be registered with the federal government on the National Firearms Registration and Transfer Record ("NFRTR"). 26 U.S.C. § 5841(a). It is unlawful "to receive or possess a firearm" that is not so registered. *Id.* § 5861(d).

A firearm, as defined and regulated under the NFA, is a term of art. It means:

(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall

length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

*Id.* § 5845.

If a person wants to lawfully possess one of these weapons, they must register the firearm with the NFRTR. *Id.* § 5841(b). To register a firearm, one must submit an application which includes, among other things, payment of a $200 tax, identification of the firearm being registered, and the identification of the applicant along with fingerprints and a photograph. *See id.* §§ 5811, 5812. The Secretary of the Treasury will deny an application if the making, transfer, receipt, or possession "of the firearm would place the person making the firearm [or the transferee] in violation of the law." *Id.* §§ 5812, 5822.

## B.    The Caselaw

In 1939, the Supreme Court heard a Second Amendment challenge to the NFA by two men (two former bank robbers) who were charged with transportation of an un-registered short-barreled shotgun in interstate commerce. *United States v. Miller*, 307 U.S. 174, 175 (1939). The Court rejected their challenge. It held that "[i]n the absence of any evidence tending to show that possession or use of a [short-barreled shotgun] at this time has some reasonable relationship to the preservation or efficiency of a well regulated

militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument." *Id.* at 178.

In the wake of *Miller*, federal courts routinely denied Second Amendment claims in both civil and criminal contexts. *See United States v. Bullock*, --- F. Supp. 3d ---, 2023 WL 4232309, at *6 (S.D. Miss. June 28, 2023).

That all changed in 2008, when the Supreme Court limited *Miller*'s reach. "We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008). A broader, more generous interpretation of the Second Amendment "accords with the historical understanding of the scope of the right," and coexists with the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627.

## C.    Present Application

Shepherd now argues that the NFA's registration requirement is unconstitutional and infringes on his Second Amendment rights. Relying primarily on *Bruen*, 142 S. Ct. at 2111, along with the Fifth Circuit's decisions in *United States v. Rahimi*, 61 F. 4th 443 (5th Cir. 2023), *cert granted*, 143 S. Ct. 2688 (2023) and *United States v. Daniels*, 77 F. 4th 337 (5th Cir. 2023), Shepherd argues that his possession of an unregistered short-barreled shotgun is protected by the Second Amendment as the registration requirement is not consistent with the nation's historical tradition of firearms regulation.

The first step of the *Bruen* analysis asks whether the Second Amendment's plain text covers the conduct at issue. That step involves three subparts. *See United States v.*

*Miller*, No. 3:23-CR-41-S, 2023 WL 6300581 (N.D. Tex. Sept. 27, 2023). First, courts consider whether the individuals challenging the law "are part of 'the people' whom the Second Amendment protects." *Bruen*, 142 S. Ct. at 2134. Second, courts ask if the weapon at issue is "'in common use' today for self-defense." *Id.*; *see also Rahimi*, 61 F.4th at 454. Lastly, courts assess whether the Second Amendment protects the "proposed course of conduct." *Bruen*, 142 S. Ct. at 2134.

Because the first step in the *Bruen* analysis is a threshold question, if the Court finds that a person's conduct is *not* protected by the Second Amendment, the Court does not need analyze the historical tradition of firearm regulation put forth by the government. Such is the case here.

To start, Shepherd is part of "the people" protected by the Second Amendment. Neither party argues to the contrary and the Court agrees that that conclusion is the most faithful reading of *Heller*.[2]

Yet the next subpart is not so easily answered.

The government argues that the Supreme Court and Congress "have already determined [that] short-barreled shotguns are dangerous and unusual weapons likely to be used not for self-defense, but for criminal purposes." Docket No. 29 at 8. As mentioned earlier, the Supreme Court in *Heller* said the Second Amendment does not protect short-barreled shotguns, as they are "weapons not typically possessed by law-abiding citizens for lawful purposes," 554 U.S. at 625. The government, thus, contends that short-barreled-

---

[2] While Shepherd has some minor criminal history, he has never been convicted of any offense which would prohibit him from possessing a firearm. Docket No. 28 at 18.

shotguns are not "in common use" for self-defense, like the handguns at issue in *Heller* and *Bruen*. Docket No. 29 at 8.

Shepherd responds that the Supreme Court's statement was "nonbinding dicta," and that short-barreled shotguns are now weapons "in common use" and therefore fall under the protection of the Second Amendment. Docket No. 28 at 6 n.2. Even if short-barreled shotguns were "unusual" when Congress passed the NFA, he says, they are "now popular firearms in common use." He relies on a concurrence in *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring), which determined that stun guns were "bearable arms" subject to Second Amendment protections because more than 200,000 citizens lawfully possessed them across 45 states. *Id*. at 420. Shepherd argues that short-barreled shotguns are likewise "in common use" and protected by the Second Amendment because there were 512,315 short-barreled firearms on the federal registry in May 2021. Docket No. 28 at 14.

Shepherd further attempts to bolster his claim that short-barreled shotguns are "in common use" by discussing a new regulatory change signed by the U.S. Attorney General, ATF Rule 2021R-08F (the "Final Rule"). *Id*.; *see* 27 C.F.R. § 479.11. The Final Rule enables handguns to be equipped with " stabilizing braces" which allow the weapon to be "fired from the shoulder." *Id*. The Final Rule would have required handguns with these braces to be classified as short-barreled rifles.

Shepherd explains that this rule change "converts the weapon from a handgun to a short-barreled rifle that must be registered under the NFA." *Id*. And at a motion hearing, his counsel argued that due to this, the commonality of short-barreled rifles

increases tenfold. Shepherd points to the fact that there are between 3 million and 7 million shoulder braces for handguns. *Id.* "[S]hort-barreled firearms that can be fired from the shoulder are extremely popular among gun owners, whether those firearms originated as shotguns and rifles or whether they are retrofitted handguns." *Id.* at 15-16.

This ATF rule change was addressed in *Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023). There, the Fifth Circuit invalidated the Final Rule under the Administrative Procedure Act, which rendered a Second Amendment analysis unnecessary. *Id.* at 586 n.59. An injunction is now in place blocking this Final Rule. *See Mock v. Garland*, No. 4:23-CV-95-O, 2023 WL 6457920 (W.D. Tex. Oct. 2, 2023). Shepherd argues that regardless of whether the regulation "stands or falls . . . the fact remains that short-barreled firearms—be they manufactured or altered to meet the definition in the NFA—are weapons in common use." Docket No. 28 at 16.

Because the Fifth Circuit has determined that the Final Rule is unlawful, this Court is unpersuaded that the number of short-barreled firearms is in the millions. It therefore accepts the lower number: that there are approximately half a million (registered) short-barreled firearms in the United States, and more than that if unregistered firearms are taken into account.

Moving on, Shepherd explains that a short-barreled firearm is a "bearable" weapon because it is common, possessed at home, and can be used for lawful purposes. Docket No. 30 at 1. Thus, similar to the *Caetano* concurrence, he says a short-barreled firearm is subject to Second Amendment protections.

The Court assumes for present purposes that short-barreled firearms are now common in America. Still, though, Shepherd has not persuasively shown that they are "in common use today *for self-defense*." *Bruen*, 142 S. Ct. at 2134 (emphasis added).

The "NFA's object was to regulate certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used." *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992); *see also Mock*, 75 F.4th at 567 ("the NFA was designed to target 'gangster-type weapons' that are 'especially dangerous and unusual'"); *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (noting that Congress found that "short-barreled rifles are primarily weapons of war and have no appropriate sporting use or use for personal protection").

The Supreme Court recently reiterated that "dangerous and unusual" weapons are not protected by the Second Amendment. *Bruen*, 142 S. Ct. at 2143; *see also Mock*, 75 F. 4th at 596 (Higginson, J., dissenting) ("I am persuaded that uniquely dangerous weapons, including short-barreled rifles, are not covered by the Second Amendment[.] And the Supreme Court's more recent decision in *Bruen* left *Heller*'s dangerous-and-unusual carveout intact."). Short-barreled firearms are subject to "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627. And as far as this Court can tell, each district court to consider this specific issue in the wake of *Bruen* has landed at the same conclusion. *See, e.g., United States v. Miller*, No. 3:23-CR-41-S, 2023 WL 6300581 (N.D. Tex. Sept. 27, 2023) (holding that short-barreled rifles are dangerous and unusual weapons not subject to Second Amendment protections);

*United States v. Danielson*, No. 22-299 (MJD/LIB), 2023 WL 5288049, at *4-5 (D. Minn. Aug. 17, 2023) (upholding the constitutionality of §§ 5841, 5845, 5861(d), and 5871); *United States v. Royce*, No. 1:22-CR-130, 2023 WL 2163677, at *3 (D.N.D. Feb. 22, 2023) ("short-barrel rifles fall within the historical tradition which prohibits the carrying of dangerous and unusual weapons."); *United States v. Rush*, No. 22-CR-40008-JPG, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023) ("*Bruen* had no impact on the constitutionality of regulating the receipt or possession [of] an unregistered short-barreled rifle."); *United States v. Saleem*, 659 F. Supp. 3d 683, 699 (W.D.N.C. 2023) ("the NFA's regulations on short-barreled shotguns . . . do not run afoul of the Defendant's constitutional rights").

Lastly, even if Shepherd succeeded on this second subpart, his arguments fail at the third. He has not explained how this part of the NFA infringes upon his Second Amendment right, given his proposed course of conduct. The NFA does not bar his possession of these firearms. It simply requires their *registration*. And on these facts, the Court cannot conclude that the registration requirements are unconstitutional.

For these reasons, the Court concludes that the charge of possessing an unregistered short-barreled shotgun does not infringe Shepherd's Second Amendment rights.

## IV.    Conclusion

The *Motion to Dismiss* is denied. The Court will set this matter for trial.

**SO ORDERED**, this the 5th day of January, 2024.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

12